IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 4-23CR-320-P |
| v. | |
| MARK RUBIN (01) | |

## INFORMATION

The United States Attorney charges:

Count One
Conspiracy to Solicit and Receive Health Care Kickbacks
(Violation of 18 U.S.C. § 371))

1. Beginning in or around March 2017 and continuing through in or around May 2020 in the Fort Worth Division of the Northern District of Texas and elsewhere, the defendant **Mark Rubin** did knowingly and willfully conspire and agreed with other persons both known and unknown to United States Attorney, to commit and abet certain offenses against the United States, including: to violate the Anti-Kickback statute by knowingly and willfully soliciting or receiving any remuneration, including any kickback, directly or indirectly, overtly or covertly, in cash or in kind, in return for referring any individual for the furnishing or arranging for the furnishing of any item or service or in return for ordering or recommending the ordering of any item or service for which payment may be made in whole or in part under a Federal health care program, in violation of 42 U.S.C. §§ 1320a-7b(b)(1)(A) and 1320a-7b(b)(1)(B).

## Object of the Conspiracy

2. The object of the conspiracy was for the defendant and others to unlawfully enrich themselves and others through a kickback scheme.

## Manner and Means of the Conspiracy

3. The manner and means by which the defendants sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

    a. Defendant Mark Rubin was a pain management doctor.

    b. Dr. Rubin ordered certain toxicology tests for patients that he saw. He ordered that these tests be performed by RK Clinical Solutions, LLC ("RK").

    c. A marketer unknown to Rubin, and individuals who worked at RK agreed that Dr. Rubin would submit the majority of his toxicology orders to RK in exchange for illegal financial incentives, otherwise known as kickbacks. They further agreed that he would order a significant number of toxicology tests to justify the kickbacks.

    d. As a result of this arrangement, Dr. Rubin submitted orders that resulted in billings by RK in excess of $4,600,000 to federal health care programs. In exchange, Dr. Rubin received over $330,000 in kickbacks, as further detailed below.

    e. These kickbacks consisted of medical advisor agreements, in which Dr. Rubin would be paid for theoretical advisory services. In reality, Dr. Rubin did not perform services sufficient to justify is compensation, was not paid on an hourly rate, and these agreements were used as a way to funnel kickbacks to Dr. Rubin.

## Overt Acts

4. In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one coconspirator committed and caused to be committed, in the Northern District of Texas, and elsewhere, at least one of the following overt acts, among others:

    a. Beginning in or around March 2017 and continuing through in or around May 2020 Dr. Rubin received over $330,000 in medical advisor payments from RK.

    b. Dr. Rubin and others made it appear as though he was working hours that he did not work.

    c. Dr. Rubin submitted the majority of his toxicology orders to RK.

All done in violation of Title 18 United States Code, Section 371.

LEIGHA SIMONTON
UNITED STATES ATTORNEY

_____
P.J. MEITL
Assistant United States Attorney
D.C. Bar No. 502391
801 Cherry Street, 17th Floor
Fort Worth, Texas 76102
Telephone: 817.252.5272
E-mail: philip.meitl@usdoj.gov