ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 4:23-CR-320-P |
| v. | |
| MARK RUBIN | |

## FACTUAL RESUME

PLEA TO COUNT ONE OF THE INFORMATION:
Count One: Conspiracy to Solicit and Receive Illegal Kickbacks, in violation of 18 U.S.C. § 371, with the underlying substantive offense of Soliciting and Receipt of Illegal Kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A) and 1320a-7b(b)(1)(B).

MAXIMUM PENALTY:
$250,000 fine and not more than five (5) years imprisonment, plus a term of supervised release of not more than 3 years. If the defendant violates any condition of supervised release, the Court may revoke such term of supervised release and require the defendant to serve an additional period of confinement. Further the Court must impose a Mandatory Special Assessment of $100.00.

ELEMENTS OF THE OFFENSE:
The essential elements which must be proved beyond a reasonable doubt in order to establish the offense charged in Count One of the Indictment, are as follows:[1]

> First.   That the defendant and at least one other person made an agreement to commit the crime of soliciting and receiving illegal kickbacks, in violation of the Anti-Kickback statute as charged in the indictment;
>
> Second.   That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and;
>
> Third.   That at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

---

[1] Fifth Circuit Pattern Jury Instruction 2.15A (5th Cir. 2019).

**Factual Resume—Page 1**

STIPULATED FACTS:

1. Defendant Mark Rubin was a pain management doctor.

2. Dr. Rubin ordered certain toxicology tests for patients that he saw. He ordered that these tests be performed by RK Clinical Solutions, LLC ("RK").

3. A marketer unknown to Rubin and individuals who worked at RK agreed that Dr. Rubin would submit the majority of his toxicology orders to RK in exchange for illegal financial incentives, otherwise known as kickbacks. They further agreed that he would order a significant number of toxicology tests to justify the kickbacks.

4. As a result of this arrangement, Dr. Rubin submitted orders that resulted in Medicare and other federal healthcare programs paying RK in excess of $481,000. In exchange, Dr. Rubin received over $330,000 in kickbacks, as further detailed below.

5. These kickbacks consisted of medical advisor agreements, in which Dr. Rubin would be paid for theoretical advisory services. In reality, Dr. Rubin did not perform services sufficient to justify his compensation, was not paid on an hourly rate, and these agreements were used as a way to funnel kickbacks to Dr. Rubin. Dr. Rubin received over $330,000 in medical advisor payments from RK.

6. The government agrees that Dr. Rubin received approximately $330,000 in kickback payments and that this number would be the appropriate loss number under the guidelines for this defendant only, given the timeliness of his plea, and the facts and circumstances of this case.

[remainder of page left intentionally blank]

7.      The defendant agrees that the defendant committed all the essential elements of the offenses. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the Information.

AGREED TO AND STIPULATED on this 11 day of AUGUST, 2023.


_____
MARK RUBIN
Defendant

_____
LYNETTE BYRD
Attorney for Defendant